1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PATRICIA WATKINS,

                Petitioner,

     v.

STATE OF WASHINGTON,

              Respondent.

Case No.  C06-5141FDB

REPORT AND
RECOMMENDATION

**NOTED FOR:
OCTOBER 27th, 2006**

      This habeas corpus action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR 4. Petitioner filed this action pursuant to 28 U.S.C. § 2254.  Petitioner is challenging the legality of a 2003 driving under the influence of intoxicants conviction in Pierce County.

<u>INTRODUCTION AND SUMMARY CONCLUSION</u>

      Petitioner challenges her 2003 Pierce County driving under the influence of intoxicants conviction.  She was found guilty after a jury trial and sentenced to 365 days jail time, 363 days of which are suspended contingent on the completion of five years probation.  (Dkt. # 14, page 1).

1  Having reviewed the entire file and the state record provided by the Pierce County Prosecutor's

2  Office this court concludes that three of the four issues raised are unexhausted and procedurally

3  barred.  The remaining issue actually contains two claims, one of which is exhausted and without

4  merit and one of which is unexhausted but procedurally barred.  The petition should be **DISMISSED**

5  **WITH PREJUDICE**.

6  <u>SENTENCE, CONVICTION, AND FACTS</u>

7  Petitioner was found guilty after a jury trial of driving under the influence of intoxicants.

8  (Dkt. # 14).  She was sentenced to 365 days jail time with 363 days suspended contingent on

9  completing five years probation.  (Dkt. # 14 page 1).  The facts surrounding the traffic stop and her

10  trial were set forth by the respondent as follows:

11  Aaron Latimer is a trooper for the Washington State Patrol.  RP 3.  In
addition to extensive training focusing on DUI (driving under the influence of
12  intoxicants) enforcement, Trooper Latimer has been trained and certified as a drug
recognition expert in Washington State.  RP 3-4.  On April 18, 2002 Trooper Latimer
13  was on routine patrol when he observed Watkins driving her white Fiesta, traveling
25 mph in a 35 mph zone on Pacific Avenue.  RP 5.  The trooper observed Watkin's
14  car for approximately ten to eleven blocks; Watkin's brake lights were on for the
entire time.  RP 5.  The trooper activated his emergency equipment and stopped the
15  vehicle.  RP 5.

16  Upon contacting Watkins, the Trooper detected an odor of intoxicants coming
from within the vehicle.  RP 5.  Watkins admitted that she had consumed alcohol.  RP
17  6.  The trooper described Watkin's as having bloodshot eyes and a dazed or confused
look on her face.  RP 6.  The trooper noticed that Watkins movements seemed a "bit
18  methodical or deliberate."  RP 6.  Watkins agreed to perform field sobriety tests.  RP
6.  As she exited her vehicle, Watkins appeared "off-balance."  Once she was out of
19  the car, she kept one hand on the door, but continued to sway.  RP 6.  Trooper
Latimer testified that when she walked back to the rear of her car, she went slowly,
20  her legs were shaky and "her body seemed a little limp."  RP 6.  Watkins denied being
on any medications.  RP 7.  Trooper Latimer testified that based upon his training and
21  expertise, Watkins exhibited all six clues of Horizontal Gaze Nystagmus ("HGN").
RP 8.  A forensic toxicologist testified that HGN is an involuntary jerking of the eye
22  that occurs when someone is under the influence of a central nervous system
depressant, such as alcohol.  RP 38.  The HGN test is considered the most reliable
23  because it is not subject to practice or tolerance to alcohol which can affect the results
of other field sobriety tests.  RP 38.  Watkins failed to maintain her balance during the
24  walk and turn test.  RP 8.  Watkins further failed to maintain her balance during the
one-leg stand test.  RP 11.  During this test, she fell forward and landed in the
25  trooper's arms.  RP 11.  Trooper Latimer testified that Watkins appeared to be
unconscious for a few seconds, but that she declined medical attention.  RP11.
26  Trooper Latimer attempted to resume the one-leg stand test, but again Watkins fell
over into his arms.  RP 11.  He seated her on the ground and called for medical aid to
27  arrive at the scene.  RP 11.  Watkins asked him not to call for an ambulance but to
allow her to go home, which she described as "just down the road."  RP 11-12.

28

Trooper Latimer advised Watkins that she was under arrest for DUI and advised her of her rights.  RP 12-13.  After the trooper advised defendant of her implied consent warnings, defendant refused to take the blood draw.  RP 16.  Watkins stated that she understood the implied consent warnings, but refused to sign them; she wanted to call her roommate, "Kenny," because he was a lawyer.  RP 16.  Watkins attempted to reach him by phone but received no answer.  RP 16-17.  Trooper Latimer asked if she wanted to call another attorney or the public defender.  Watkins indicated that Kenny was her lawyer and that she wouldn't talk to anyone else.  RP 17.  She again refused another lawyer or public defender when her second attempt to reach "Kenny" failed.  RP 17.  Trooper Latimer indicated that she needed to decide at that time whether she would submit to the blood test.  Watkins stated that she would not do anything without talking to Kenny even though she knew that this would be treated as a refusal.  RP 17.

(Dkt. # 14, pages 2-4).

## PROCEDURAL HISTORY

Petitioner was found guilty and sentenced in Pierce County District Court.  She filed a direct appeal in Pierce County Superior Court in her direct appeal she raised the following challenges:

    1.      Her traffic stop violated her Fourth Amendment Rights.

    2.      The court violated her due process rights by failing to conduct a hearing on her claim the court lacked jurisdiction.

    3.      Her Sixth Amendment rights were violated when the court entered a not guilty plea on her behalf when she was unrepresented.

    4.      She was denied effective assistance of counsel based on a personal conflicts between her and her attorney and the lack of a attorney/client relationship.

    5.      Her Due process rights were violated by the court's refusal to consider her motion to vacate.

    6.      The evidence was insufficient to support a conviction for driving while intoxicated.

    7.      The evidence was insufficient to support a "sentencing enhancement", refusal to consent to a blood draw.

(Dkt. # 14, Exhibit 4).  On May 14th, 2004 the Superior Court affirmed the conviction and remanded for imposition of the sentence.  (Dkt. # 14, Exhibit 6).

Petitioner then filed for discretionary review with the Washington State Court of Appeals.  (Dkt. # 14, Exhibit 7).  Petitioner presented only one issue in this notice.  The only issue raised was an alleged violation of petitioner's Sixth Amendment right to counsel based on either an actual conflict of interest or because of a breakdown in the client attorney relationship.  (Dkt. # 14, Exhibit

REPORT AND RECOMMENDATION
Page - 3

8).  The Washington Court of Appeals denied the motion for discretionary review.  (Dkt. # 14, Exhibit 11).  A motion to modify the ruling was also denied.  (Dkt # 14, Exhibit 13).

Petitioner filed a motion to modify the ruling denying review which was sent to the State Supreme Court to be considered as a motion for discretionary review.  (Dkt. # 14, Exhibit 14).  Review was denied on February 24th, 2005.  Petitioner moved to modify and her motion was also denied  (Dkt. # 14, Exhibit 18).

Petitioner then filed a personal restraint petition.  (Dkt. # 14, Exhibit 20).  Petitioner raised six separate headings in her petition. Each heading was followed by a number of examples.  The six headings were:

    1.    Ineffective assistance of counsel.

    2.    Unfair prejudice because of judicial decisions or rulings in the case by Judge Heller.

    3.    Unfair prejudice because of judicial decisions or rulings in the case by Judge Nevin.

    4.    Her case and trial was unfair and prejudicial because of the court's refusal to remove her public defender from the case.

    5.    Her case and trial were unfair because of third party interference by Kenneth Wayne Lemming.

    6.    Her case, trial, and appeal were unfair. And prejudicial.

(Dkt. # 14, Exhibit 20).  The Washington State Court of Appeals dismissed the petition.  (Dkt. # 14, Exhibit 23).  Petitioner filed for discretionary review with the State Supreme Court.  (Dkt. # 14, Exhibit 24).  In this three page motion petitioner uses no headings but claims her right to counsel was violated because she did not have counsel at her traffic stop or at her initial arraignment.  (Dkt. # 14, Exhibit 24).  She also claims ineffective assistance of counsel and interference in her case by Mr. Lemming.  (Dkt. # 14, Exhibit 24).  Her motion was denied .  (Dkt. # 14, Exhibit 25).  A subsequent motion to modify the court's ruling was not acted on as the motion was not timely.  (Dkt. # 14, Exhibits 26 and 27).

This habeas corpus petition followed and petitioner raises the following issues:

    1.    Lack of counsel at the traffic stop and arrest and failure to know or understand her Miranda warnings because of her level of intoxication.

2.      Denied counsel at arraignment.

3.      Ineffective assistance of counsel due to irreconcilable differences preventing proper attorney/client relationship and due to her attorney's poor performance.

4.      Third party interference by Kenneth Wayne Lemming.

(Dkt. # 1).

## EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.  28 U.S.C. §2254(e)(2) (1996). Petitioner's claims rely on established rules of constitutional law.  Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

## STANDARD

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  Section 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States."  28 U.S.C. § 2254(a)(1995).  The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law.  Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).   A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

DISCUSSION

A. <u>Exhaustion and procedural bar</u>.

Respondent argues petitioner did not exhaust claims 1, 2, or 4 and has only exhausted a portion of the 3rd claim.  (Dkt. # 14 page 7).  Before claims may be raised in a federal habeas corpus petition, state remedies must be exhausted; or an applicant must show there is either an absence of available state corrective process or that circumstances exist that render such process ineffective to protect the rights of the applicant.  28  U.S.C. § 2254(b)(1).  A state prisoner is required to present his federal constitutional claims to the highest state court before he may present his claims in a federal habeas petition.  <u>O'Sullivan v. Boerckel</u>, 119 S.Ct. 1728, 1733-34 (1999).  However, a petitioner who has not exhausted state court remedies may be excluded from presenting the issues to the state's highest court when the petitioner has not complied with a state procedural rule.  <u>Id</u>. at 1734; <u>Harris v. Reed</u>, 489 U.S. 255, 260 (1989).

When a state prisoner defaults on federal habeas claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that failure to consider the claims will result in a fundamental miscarriage of justice.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750-751 (1991).  Federal habeas review is also barred where the petitioner has not exhausted state remedies but the state's highest court would now find the claim to be procedurally barred.  <u>Coleman</u>,  501 U.S. at 733; <u>Noltie v. Peterson</u>, 9 F.3d 802, 805 (9th Cir. 1993).

Here, any attempt to raise these unexhausted claims in state appellate courts would now most

likely be time-barred and would certainly be repetitive.   See  RCW 10.73.090;  RCW 10.73.140;

RAP 16.4(d); In re Taylor, 105 Wn.2d 683 (1986). 2d 485 (1990).  Further, petition cannot show

cause and prejudice as the only thing that prevented her from properly exhausting the issues was her

own failure to raise them as Constitutional claims.

The court begins the exhaustion analyses with the direct appeal.  Petitioner raised seven

issues at the Superior Court level.  (Dkt. # 14, Exhibit 4).  When she sought discretionary review in

the Washington State Court of Appeal, however, she raised only one issue.  (Dkt. # 14, Exhibit 8).

The only issue raised was an alleged violation of the Sixth Amendment right to counsel based on

either an actual conflict of interest or because of a breakdown in the client attorney relationship. The

opinion of the Washington State Court of Appeals is just over three pages long and is the operative

opinion showing the issue raised.  The court stated:

> The State charged Watkins with driving under the influence of intoxicants.
> At her arraignment, Watkins filed a pro se motion challenging the district court's
> jurisdiction.  Watkins refused to enter a plea until her jurisdictional motion was
> decided.  The district court entered a plea of not guilty for Watkins and referred her
> to the Department of Assigned Counsel to obtain counsel.
>
> Watkins' appointed counsel filed a motion to withdraw, citing Watkins
> failure to cooperate and Watkins' belief that a conflict of interest existed.  Watkins
> had filed an action in federal court against the State of Washington and believed that
> as a result her appointed counsel has a conflict of interest, either because her
> appointed counsel was licensed by the State to practice law or because she
> erroneously believed that her appointed counsel was employed by the State.  Watkins
> sought the appointment of counsel of her choice, including the choice of being
> represented by someone who is not licensed to practice law in the State of
> Washington.  The district court denied the motion to withdraw, ruling Watkins did
> not have the right to be represented by someone who is not licensed to practice law
> and that Watkins' lawsuit against the State of Washington did not create a conflict of
> interest between Watkins and her appointed counsel.
>
> Watkins requested an evidentiary hearing regarding her challenge to the
> court's jurisdiction.  The district court denied her request.  The superior court denied
> her motions to order the district court to conduct such a hearing.
>
> Watkins was represented by her appointed counsel during trial.  The
> jury convicted Watkins of driving while under the influence of intoxicants.  She
> appealed to superior court, which affirmed her conviction.
>
> Watkins seeks discretionary review.  This court grants discretionary
> review of a superior court decision reviewing the decision of a court of
> limited jurisdiction only:
>
> (1)     If the decision of the superior court is in conflict with a
>          decision of the Court of Appeals or the Supreme Court; or

(2)     If a significant question of law under the Constitution of the State of Washington or the United States is involved; or

(3)     If the decision involves an issue of public interest which should be determined by an appellate court; or

(4)     If the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by the court of limited jurisdiction, as to call for review by the appellate court.

RAP 2.3 (d).

Watkins argues that under Rap 2.3(d)(2) and (3), this court should grant discretionary review. She contends that she and her appointed counsel had an irreconcilable conflict of interest and that as a result her appointed counsel could not have provided effective assistance of counsel. In determining whether an irreconcilable conflict of interest exists between an attorney and client, the court examines "both the extent and nature of the breakdown in communication between attorney and client and the breakdown's effect on the representation the client actually receives." *In Re Personal Restraint of Stenson*, 142 Wn.2d 710, 724 (2001). The breakdown in communication between Watkins and her appointed counsel was entirely of Watkins' making. She erroneously believed that she has a right to be represented by a person who is not licensed to practice law in Washington and erroneously believed that her law suit against the State of Washington created an actual conflict of interest with her appointed counsel. Given her views, Watkins would have refused to cooperate with any other appointed counsel who the court might have substituted. Further, the breakdown had little effect on the representation Watkins actually received. Her appointed counsel presented an appropriate defense to the charged crime. The district court did not abuse its discretion in denying Watkins' appointed counsel's motion to withdraw. *In Re Personal Restraint of Stenson*, 142 Wn.2d at 723. Watkins fails to demonstrate either presumed prejudice or actual prejudice arising from the performance of her appointed counsel. Thus, the superior court did not err in affirming Watkins' conviction.

(Dkt. # 14, Exhibit 11, page 1-3).

Review of the State Supreme Court's ruling denying review shows petitioner raised this same issue, (Dkt. # 14, Exhibit 16). This issue, ineffective assistance of counsel based on lack of an attorney client relationship, is exhausted.

The court next considers the personal restraint petition filed by petitioner. A reading of the 69 pages of argument, attachments and exhibits show that while petitioner raises six separate ground none are raised as federal Constitutional claims. (Dkt. # 14, Exhibit 20 filing numbers 14-8 to 14-10). Further, while the motion for discretionary review filed in the State Supreme Court mentions the concept of "right to counsel", the document does not clearly raise any federal Constitutional claim and does not squarely place the court on notice that it is considering a Constitutional challenge.

(Dkt. # 14, Exhibit 24).

Thus, the personal restraint petition did not exhaust any issues.  The only issue exhausted in this petition is the claim that counsel was ineffective because lack of an attorney/client relationship. All other claims are procedurally barred.

B.    Ineffective assistance of counsel.

This claim is not subject to the normal two prong analysis set forth in Strickland v. Washington, because petitioner does not claim the representation she received fell below an objective standard of reasonableness.    Strickland v. Washington, 466 U.S. 668, 686 (1984).  Instead, petitioner claims ineffective assistance of counsel because of irreconcilable differences.  (Dkt. #1).

The state court properly identified the issue and held:

> ... In determining whether an irreconcilable conflict of interest exists between an attorney and client, the court examines "both the extent and nature of the breakdown in communication between attorney and client and the breakdown's effect on the representation the client actually receives."  *In Re Personal Restraint of Stenson*, 142 Wn.2d 710, 724 (2001).  The breakdown in communication between Watkins and her appointed counsel was entirely of Watkins' making.  She erroneously believed that she has a right to be represented by a person who is not licensed to practice law in Washington and erroneously believed that her law suit against the State of Washington created an actual conflict of interest with her appointed counsel. Given her views, Watkins would have refused to cooperate with any other appointed counsel who the court might have substituted.  Further, the breakdown had little effect on the representation Watkins actually received.  Her appointed counsel presented an appropriate defense to the charged crime.  The district court did not abuse its discretion in denying Watkins' appointed counsel's motion to withdraw. *In Re Personal Restraint of Stenson*, 142 Wn.2d at 723.  Watkins fails to demonstrate either presumed prejudice or actual prejudice arising from the performance of her appointed counsel.  Thus, the superior court did not err in affirming Watkins' conviction.

(Dkt. # 14, Exhibit 11, pages 2-3).  This court concurs with the State Court's analysis.  The ruling of the state court does not result in a decision that is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Further, the state court ruling is not based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  The record is clear that petitioner would not accept any attorney and demanded that her boyfriend at the time, who was not licensed to practice law, be allowed to act as her counsel.  This petition is without merit.

<u>CONCLUSION</u>

This petition is without merit and should be **DENIED.**  Three claims are unexhausted and procedurally barred and the remaining claim is without merit.  A proposed order accompanies this report and recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **October 27th, 2006**, as noted in the caption.

Dated this 4th,  day of October, 2006.

*/S/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge